UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

AT CHARLESTON

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA,

      Plaintiff,

v.                            Civil Action No. 2:14-30098

MICHAEL THORNSBURY,

      Defendant.

<u>MEMORANDUM OPINION AND ORDER</u>

Pending is defendant Thornsbury's motion for partial summary judgment, filed January 13, 2016, and plaintiff National Union Fire Insurance Company's motion for partial summary judgment, filed January 27, 2016.

<u>Background</u>

Plaintiff National Union Fire Insurance Company ("National Union") has, over the years, sold to the State of West Virginia commercial general liability policies covering various government activities. National Union filed this action requesting a declaratory judgment that it has no responsibility, based on the insurance policy it issued to the state of West Virginia in July of 2012, to indemnify or defend Michael

Thornsbury, a former state circuit judge, in a state-court lawsuit brought in the Circuit Court of Kanawha County, <u>Donald Ray Stevens, et al. v. Michael Thornsbury, et al.</u>, Civil Action No. 13-C-2044.  In that suit it is claimed that Thornsbury, sued in his individual capacity,[1] framed Mr. Stevens for a crime he did not commit, and otherwise caused him to be harassed.

National Union's complaint notes that the events giving rise to the state-court suit transpired between July 31, 2012 and March 13, 2013.  Pl. Compl. at 1.  Because of these dates, National Union's complaint asserts that "only a single policy period is implicated" by the events of the lawsuit.  <u>Id.</u>

_____

[1] The complaint in the <u>Stevens</u> case names Thornsbury in the caption as "MICHAEL THORNSBURY, Mingo County, West Virginia, Resident," rather than as an official, and the allegations state that "Mr. Thornsbury, individually and under color of law, contrived, participated in and furthered the conspiracy to deprive Mr. Stevens of his civil rights." <u>Stevens v. Thornsbury et al</u> Compl. at 1-2 (ECF 1-1).  Unlike in its treatment of Thornsbury, the complaint names several other defendants' former official titles in the caption, and states that claims are brought against these other defendants "individually and in their respective official capacities." <u>Stevens v. Thornsbury et al</u> Compl. at 1, 4.  The complaint also does not request any relief from Thornsbury that he would provide in his role as a state official.  The court thus concludes that the complaint states a claim against Thornsbury only in his individual capacity, not in his official capacity as a circuit judge.

The complaint enumerates the types of coverage provided under the policy that was active during the relevant period, which include the following:

    Coverage A — Comprehensive General Liability Insurance
    Coverage B — Personal Injury Liability Insurance
    Coverage E — Wrongful Act Liability Insurance

Pl. Compl. ¶ 12.[2]  The complaint then gives reasons why National Union believes it is not required to indemnify or defend Thornsbury under coverages A, B, and E.

    One of National Union's contentions is that Thornsbury, while performing the acts alleged in the state-court suit, was neither a "Named Insured" nor an "insured" person who was covered by the policy.  See Pl. Compl. ¶¶ 13-19; ¶¶ 28-33; ¶¶ 40-45.  If Thornsbury was neither a "Named Insured" nor an "insured" at a particular time, then he would not be among those

_____

[2] Two other coverages are also mentioned:

    Coverage C — Professional Liability Insurance
    Coverage D — Stop Gap Liability Insurance

Pl. Compl. ¶ 12.  National Union states, however, that "Coverage C only deals with liability arising out of the provision of professional services, and Coverage D only deals with liability arising out of 'deliberate intent' type personal injury lawsuits by employees against their employers.  Neither of these forms of coverage is applicable to the allegations made against Thornsbury in the [state-court] Lawsuit."  Id.

persons entitled to coverage, and National Union would have no
duty to compensate him for losses.

The distinction between being the "Named Insured," as
opposed to a mere "insured," is subtle but significant.  The
"Named Insured" is always an "insured," and thus is always
covered under the policy, subject to exclusions and
qualifications described elsewhere.  Other persons, who are not
the "Named Insured," may also be "insureds" if they hold certain
positions (such as that of an official or employee) with respect
to the "Named Insured" and are "acting within the scope of
[their] duties as such."

Both parties have moved for summary judgment as to a
single point in the interpretation of the policy – whether
Michael Thornsbury qualifies as a "Named Insured."  National
Union contends that the term "Named Insured" refers only to the
organizations, noted below, that are covered by the policy, and
not to any of their employees or officers.  National Union's
Mem. in Supp. of Mot. for Partial Summ. J. and in Opp. to
Thornsbury's Mot. for Partial Summ. J. (hereinafter "Pl. Mot.
for Summ. J.") at 9-10.  Defendant Thornsbury instead contends
that the "Named Insured" explicitly includes the "Legislative,
Judicial and Executive Branches of the State of West Virginia,"

4

and that Thornsbury, who was a circuit judge at the time of the events in the underlying state lawsuit, should be included as a "Named Insured" because he was part of the "Judicial . . . Branch[]." Mem. of Authorities in Supp. of Mot. for Partial Summ. J. of Def. Thornsbury (hereinafter "Def. Mot. for Summ. J.") at 1-4.

The court emphasizes that the parties' motions do not request a full determination of National Union's obligation to defend or indemnify Thornsbury. The question of whether defendant Thornsbury is a "Named Insured" is not necessarily dispositive of the case. Even if Thornsbury counts as a "Named Insured," he could perhaps be barred from recovery because of other policy exclusions. And, if Thornsbury is not a "Named Insured," he may still receive coverage as an "insured."

### The Summary Judgment Standard

A party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those necessary to establish the elements of a party's cause of

5

action.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
(1986).

        A genuine issue of material fact exists if, in viewing
the record and all reasonable inferences drawn therefrom in a
light most favorable to the non-moving party, a reasonable fact-
finder could return a verdict for the non-movant.  Id.  The
moving party has the initial burden of showing — "that is,
pointing out to the district court — that there is an absence of
evidence to support the nonmoving party's case."  Celotex Corp.
v. Catrett, 477 U.S. 317, 325 (1986).  If the movant satisfies
this burden, then the non-movant must set forth specific facts
as would be admissible in evidence that demonstrate the
existence of a genuine issue of fact for trial.  Fed. R. Civ. P.
56(c); id. at 322-23.  A party is entitled to summary judgment
if the record as a whole could not lead a rational trier of fact
to find in favor of the non-movant.  Williams v. Griffin, 952
F.2d 820, 823 (4th Cir. 1991).  Conversely, summary judgment is
inappropriate if the evidence is sufficient for a reasonable
fact-finder to return a verdict in favor of the non-moving
party.  Anderson, 477 U.S. at 248.

## Discussion

The parties' motions call for summary judgment as to a matter of contract interpretation. "If a court properly determines that the contract is unambiguous on the dispositive issue, it may then properly interpret the contract as a matter of law and grant summary judgment because no interpretive facts are in genuine issue." Payne v. Weston, 195 W. Va. 502, 507 (1995)(citing Williams v. Precision Coil, Inc., 194 W. Va. 52, 66 n. 26 (1995), and Goodman v. Resolution Trust Corp., 7 F.3d 1123, 1126 (4th Cir. 1993)); see also Washington Metro. Area Transit Auth. v. Potomac Inv. Properties, Inc., 476 F.3d 231, 235 (4th Cir. 2007)(noting, in contract case governed by Maryland law, that "summary judgment is appropriate when the contract in question is unambiguous or when an ambiguity can be definitively resolved by reference to extrinsic evidence"). Consequently, the court will grant summary judgment as to the meaning and application of the term "Named Insured" if that term is unambiguous.

A. State Insurance Policy No. GL 440-64-11

The court begins with the insurance policy mentioned in the complaint, No. GL 440-64-11.[3]  To discern the meaning of the term "Named Insured," the court starts with the policy's definitions section, which states that "'Named Insured' means the organization named in Item 1. of the Declarations of this policy."  State Insurance Policy 440-64-11 at 22.  Turning to the section labeled "Commercial General Liability Declarations," the court observes that, although no entry is explicitly labeled "Item 1," the document lists "The State of West Virginia" under the heading of "Named Insured & Mailing Address."  Commercial General Liability Declarations at 1.[4]

Under the phrase "The State of West Virginia," however, the declarations page refers the reader to "Named

---

[3] This policy is attached as Exhibit 2 to National Union's motion for partial summary judgment (ECF 50-2).  Defendant Thornsbury cites this policy as No. GL 244-94-50, but the court believes that this is the number of the state's previous policy, given that the declarations page of the policy states "Renewal of No. GL 244-94-50" and the policy's Forms Schedule states that it is "Policy Number GL 440-64-11."
[4] This document is the first page in the Exhibit that includes the state insurance policy.  It is attached as Exhibit 2 to National Union's motion for partial summary judgment (ECF 50-2).

Insurer Endt. #1," or the first endorsement appended to the policy.[5]  Endorsement 1 reads, in pertinent part, as follows:

### NAMED INSURED

This endorsement modifies insurance provided under the following:

WEST VIRGINIA COMPREHENSIVE LIABILITY COVERAGE FORM

Item 1 of the Declarations is completed to read as follows:

A. The State of West Virginia;

B. West Virginia Parkways, Economic Development and Tourism Authority,

It is agreed that the "The State of West Virginia" means:

"The Legislative, Judicial and Executive Branches of the State of West Virginia, including all of its Boards, Commissions, Councils, Authorities, Institutions, Universities, Colleges, Schools, Departments, Divisions and Agencies; provided however, The State of West Virginia shall not be considered to include County Commissions, Municipalities, County Boards of Education, or other Political Subdivisions of the State regardless of any State Aid that may be provided."

State Insurance Policy 440-64-11 endt. 1.

---

[5] For benefit of the uninitiated, the court notes that the term "endorsement" in this context refers to "[a]n amendment to an insurance policy; a rider." Endorsement, Black's Law Dictionary (10th ed. 2014).

Taking all of these provisions together, the policy states that the "Named Insured" is "the organization named" by the policy, which is "The State of West Virginia," as defined just above.  There at first appears to be some tension between the definitions section, which contemplates a single organization, <u>see</u> State Insurance Policy 440-64-11 at 22 ("<u>the</u> organization named")(emphasis added), and Endorsement 1, which names a group of organizations.  That can be resolved, however, simply by acknowledging that the State of West Virginia is a single organization that nevertheless includes a number of sub-units, such as the West Virginia Parkways, Economic Development and Tourism Authority and various boards, departments and agencies as defined above.

Michael Thornsbury does not fit into the policy's definition of the "Named Insured."  He is plainly not the State of West Virginia.  He is also not any of the organizations listed, given that he is an individual and not an organization.

Defendant Thornsbury contends, however, that he should qualify as the "Named Insured" because the term "Judicial Branch" "includes any Circuit Judge" of the State of West Virginia.  Def. Mem. in Supp. of Summ. J. at 8.  This contention finds no support in the language of the document.  While the

10

policy does include "The Legislative, Judicial and Executive Branches of the State of West Virginia" as being among the "Named Insured," <u>see</u> State Insurance Policy 440-64-11 endt. 1, it does not include members of those branches within its definition of the state.  Indeed, the definition of "Named Insured" refers to an "organization," State Insurance Policy 440-64-11 at 22, and the entities of the State enumerated in Endorsement 1 simply name organizations and not the members of those organizations.

Moreover, the policy includes clear provisions that deal with individuals who are members, officials, or employees of the "Named Insured" and its sub-units, and those provisions classify such persons as "insureds" rather than the "Named Insured."  Each of the coverages at issue in this lawsuit and the parties' motions contains a separate provision explaining who qualifies as an "insured."  Coverage A's provision, for example, reads, in pertinent part, as follows:

> 3. Persons Insured
>
> Each of the following is an "insured" under this insurance to the extent set forth below:
>
> A. The "Named Insured",

11

> B. Any elected or appointed official, executive officer, commissioner, director, or member of the "Named Insured" while acting within the scope of his duties as such . . . .

State Insurance Policy 440-64-11 at 3.  Coverages B and E contain provisions that are very similar, with only small deviations not relevant to this motion.  See State Insurance Policy 440-64-11 at 9, 16.  It is plain from the quoted text that "[a]ny elected or appointed official . . . or member of the 'Named Insured,'" or one of its employees, is an "insured" "while acting within the scope of his duties."[6]  This language provides an avenue for individuals such as Thornsbury, who likely qualifies as a member, official, or employee of the "Named Insured," to receive coverage under the policy as "insureds."  Moreover, the contract's explicit inclusion of government officials and members as "insureds," and its lack of explicit suggestion that they are "Named Insureds," lends heavy support to the view that persons such as Thornsbury are not captured by the term "Named Insured."

---

[6] The court does not decide today whether Thornsbury is best understood as a "member," "official," or "employee" of the Judicial Branch, given that the parties have not requested such a determination.  Nevertheless, it seems clear that at least one of these terms applies to his former position as a circuit judge.

12

Thornsbury's argument, in short, ignores the distinction between being an individual who works within the Judicial Branch, and being the Judicial Branch itself. Circuit Court Judges would receive coverage, if any, as "member[s]," "officials," or "employees" of the "Judicial Branch" under the above-cited provisions of the policy. If someone were to sue the Judicial Branch itself – i.e., a state court – then that institution would receive coverage as the "Named Insured" under the policy. This conclusion is all the more reasonable given that a lawsuit against the state courts composing the "Judicial Branch" would, at least in some circumstances, be interpreted as a suit against the State of West Virginia. See, e.g., Grace v. Sparks, No. 2:15-00281, 2015 WL 7313420, at *6 (S.D.W. Va. Nov. 19, 2015) ("The Supreme Court of Appeals is inarguably a state entity."). Given that the State, in designing and purchasing the policy, clearly wished for itself to receive broad coverage as the "Named Insured," it stands to reason that the State would seek that level of coverage regardless of the name under which it is sued.

The court notes that state judges may sometimes count as the "Named Insured" when they are sued in their official, rather than individual, capacities. "[C]ircuit court judges are subject to the control of the state itself," and so official-

capacity suits against them will sometimes be construed as suits against the State of West Virginia.  <u>Ellis v. Thornsbury</u>, No. 2:14-cv-24641, 2016 WL 3039961, at *12 (S.D.W. Va. May 27, 2016).  An official-capacity suit against a state judge, if understood as a claim against the State, could give rise to coverage for the State as the policy's "Named Insured."[7]  But that coverage would be afforded to the State, not to the individual official, and the present lawsuit is brought only to

---

[7] The court notes that not all official-capacity suits are construed as suits against the State under West Virginia law.  <u>See</u> <u>Gribben v. Kirk</u>, 195 W. Va. 488, 493 (1995)("[C]ourts will entertain actions against State officials through the common law writs of mandamus, prohibition, and habeas corpus or through the courts' equitable powers to issue injunctions.  In such cases, the 'State' is not a defendant; rather, a State official is sued (usually in his or her official capacity) to require performance of a nondiscretionary duty of constitutional or statutory origin or to cease engaging in a course of conduct that violates some constitutional or statutory duty.")(citing cases including <u>Harshbarger v. Gainer</u>, 184 W. Va. 656 (1991)).

The court need not consider whether an official-capacity suit in which an officer, rather than the State, is considered the "real" defendant would trigger coverage for the officer as an "insured" or a "Named Insured."  This is because the relief which the plaintiffs sought in the <u>Stevens</u> lawsuit is far from that sought in the narrow types of official-capacity actions in which the officer is recognized as the "real" defendant.  As explained in <u>Gribben</u>, such suits typically seek "performance of a nondiscretionary duty of constitutional or statutory origin," or for the official "to cease engaging in a course of conduct that violates some constitutional or statutory duty."  The <u>Stevens</u> lawsuit is a claim for money damages based on Thornsbury's alleged past misconduct, largely on the basis of tort law, and it does not involve the types of remedies outlined in <u>Gribben</u>.

14

consider National Union's duty to defend or indemnify Thornsbury himself.  <u>See</u> Pl. Compl. at 1 ("The central question in this declaratory judgment action is whether the insurance policy at issue provides a duty to defend and/or a duty to indemnify <u>Thornsbury</u> . . . .")(emphasis added).  It is thus irrelevant whether an official-capacity suit against an officer could allow the State to receive "Named Insured" coverage.  Moreover, as stated above in note 1, Thornsbury was sued only in his individual capacity in the <u>Stevens</u> case.  The observations regarding official-capacity suits thus do not affect the present case at all.

Defendant Thornsbury makes several additional arguments regarding this policy that merit attention.  First, Thornsbury denies the applicability of the policy provisions, including the above-discussed provision on page 3 of the policy, explaining that "officials" or "members" of the "Named Insured" are "insureds" rather than "Named Insureds."  Def. Mot. for Summ. J. at 11.  Thornsbury contends that this "definition . . . is not controlling because the policy then refers to Endorsement 1 for further definition."  But Endorsement 1 only modifies the identity of the policy's "Named Insured" to include various organizational sub-entities of the State of West Virginia.  It does not alter the definitions given on page 3 and elsewhere

that explain the coverage afforded to individuals as "insureds."[8]

<u>See</u> State Insurance Policy 440-64-11 at 3 (noting, in pertinent

part, that an "official . . . or member of the 'Named Insured'

_____

[8] The court notes that Thornsbury mistakenly reproduces a portion
of the policy as though it stated that officials and members of
the "Named Insured" shall themselves be considered "Named
Insureds" as well.  Def. Mot. for Summ. J. at 11.  In
particular, Thornsbury underquotes and misquotes the following
passage:

> 3A-The Named Insured<u>:</u>
>
> (B) Any elected official or appointed official or
> appointed official [sic], executive officer,
> commissioner, director, or member of the "Named
> Insured" while acting within the "scope of his duties
> as such."

Def. Mot. for Summ. J. at 11 (emphasis added).  Although
Thornsbury does not say from what page this quotation comes, it
is not a correct reproduction of any part of the policy.  As
noted above, the policy's clauses that are similar to the text
that Thornsbury included read as follows:

> <u>3.  Persons Insured</u>
>
> <u>Each of the following is an "insured" under this</u>
> <u>insurance to the extent set forth below:</u>
>
>> A. The "Named Insured"<u>,</u>
>>
>> B. Any elected or appointed official, executive
>> officer, commissioner, director, or member of the
>> "Named Insured" while acting within the scope of
>> his duties as such . . . .

State Insurance Policy 440-64-11 at 3 (emphasis added); <u>see</u> <u>also</u>
<u>id.</u> at 9, 11 (similar clauses defining the "Named Insured" and
"insureds").  Consequently, officials and members of the "Named
Insured" are listed as "insureds," not "Named Insureds."

16

while acting within the scope of his duties as such" "is an 'insured'").

Second, Thornsbury argues extensively that circuit judges must be included within the Judicial Branch because "otherwise they would be constitutionally incapable of exercising the judicial power of the sovereign and [would] occupy a position akin to an administrative law judge."  Def. Mot. for Summ. J. at 3-4.  Thornsbury cites the West Virginia Constitution, which states:

> The judicial power of the state shall be vested solely in the supreme court of appeals and in the circuit courts . . . and in the justices, judges and magistrates of such courts.

W. Va. Const. art. VIII, § 1.  Thornsbury also cites various state rules and court decisions noting that circuit judges exercise the state's judicial power.  <u>See</u> Def. Mot. for Summ. J. at 1-2 (citing <u>State ex rel. Farley v. Spaulding</u>, 203 W. Va. 275, 280 (1998); <u>State ex rel. Frazier v. Meadows</u>, 193 W. Va. 20, 26 (1994); <u>State ex rel. Bagley v. Blankenship</u>, 161 W. Va. 630, 634 (1978); <u>State ex rel. Lambert v. Stephens</u>, 200 W. Va. 802 (1997)).

Thornsbury is plainly correct that circuit judges exercise the state's judicial power.  He is also plainly correct

that the circuit courts, as organizations, are part of the
"Judicial Branch" as that term is used in the insurance policy.
But none of the authority cited by Thornsbury creates any
quandary with describing a circuit judge as a "member,"
"official," or "employee" of the Judicial Branch, which is how
such persons are captured by the insurance policy.  There is no
difficulty, for example, in saying that a judge, as a member of
the Judicial Branch, may exercise the state's judicial power.
Indeed, Thornsbury himself describes judges in precisely this
way.  Def. Mot. for Summ. J. at 9-10 ("The Constitution makes no
distinction between a supreme court justice and a circuit judge
as <u>members</u> of the Judicial Branch.")(emphasis added).

        Third, Thornsbury notes that National Union refers, in
its complaint and elsewhere, to the Supreme Court of Appeals as
the "Named Insured" covered under this policy, and he objects to
this designation.  Def. Thornsbury's Resp. to Pl. Mot. for Part.
Summ. J. at 1.  It is not clear why this point matters to
Thornsbury's argument.  It seems likely that the Supreme Court
of Appeals receives coverage as a "Named Insured" simply because
it is part of the entity of the Judicial Branch.  Thornsbury,
however, is not the Supreme Court of Appeals, and, unlike the
Supreme Court of Appeals, he is not an organization.  He is,
once again, an individual person who works within the court

18

system.  But, even if National Union's complaint and other materials are mistaken, and the Supreme Court of Appeals does not receive "Named Insured" coverage, its lack of such status would not endow Thornsbury with "Named Insured" status.[9]

Fourth, defendant Thornsbury raises a series of objections as to why circuit judges should not be viewed as mere employees of the Judicial Branch, particularly suggesting that the state would gain great control over judges if they were so

---

[9] The court also notes that the record includes a certificate of insurance issued to the Supreme Court of Appeals, identifying it as an "Additional Insured" under the policy.  See Certificate of Liability Insurance (the certificate is attached to the complaint as Exhibit C (ECF 1-3)).  But the inclusion of the Supreme Court of Appeals as an "Additional Insured" does not have any impact in determining whether Thornsbury is a "Named Insured," or seemingly even on whether the Supreme Court of Appeals is a "Named Insured."

The court observes, first, that the policy appears to suggest that persons to whom certificates of insurance are issued are to be considered "insureds" rather than "Named Insureds."  Endorsement 2 of the policy states, "the provisions of the certificate of liability insurance issued by the State of West Virginia Board of Risk and Insurance Management to insureds covered under this policy are incorporated into this policy." State Insurance Policy 440-64-11 endt. 2 (emphasis added).  Also, the policy is clear that either a person or an organization can be an "insured," see State Insurance Policy 440-64-11 at 21 ("'Insured' means any person or organization qualifying as an insured in the 'persons insured' provision of the applicable insurance coverage."), and that the "Named Insured" is an "insured," id. at 3.  And, as explained above, Thornsbury's position would not be bolstered even if the Supreme Court of Appeals were a Named Insured or part of a Named Insured.

19

viewed.  Def. Mot. for Summ. J. at 12-14 ("As employees, Circuit
Judges could have their terms of office and salaries reduced,
they could be fired at will; they could be made to decide each
case as directed by their employer with no exercise of
discretion; they could be told how and when to manage their
docket . . . ."). Thornsbury notes, also, that such control is
inconsistent with state practices, including that judges must be
impeached and cannot simply be fired at will.

    None of these objections need be addressed given that
Thornsbury could qualify as a "member" or "official" of the
Judicial Branch rather than as an "employee" of it, although, as
noted above, the court need not decide today which of these
labels is most appropriate.  The court observes, however, that
the label "employee" need not suggest that a worker has no power
or rights against an employer.  Tenured university professors,
for example, are typically considered to be employees, but they
often hold protections against many of the negative
possibilities that worry Thornsbury, such as at-will firings,
salary reductions, and micro-management.  <u>See</u>, <u>e.g.</u>, <u>Perry v.
Sindermann</u>, 408 U.S. 593 (1972).

    It is also noteworthy that the "Named Insured," in
addition to receiving coverage without a general requirement of

20

engagement in official duties, receives different obligations and protections than does a mere "insured."  For example, the policy's conditions state that "[t]he 'Named Insured' shall maintain records of such information as is necessary for premium computation, and shall send copies of such records to the Company at the end of the policy period as the Company may direct," but no such action is required of a mere "insured." Policy No. GL 440-64-11 at 23.  Similarly, Coverage A does not allow recovery for "any loss, cost or expense arising out of any governmental direction or request that the 'Named Insured' test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants," but it places no such explicit condition on its coverage of a mere "insured."  Id. at 2.  In sum, the policy includes various provisions differentiating between the "Named Insured" and other "insureds," and the duties and coverage limitations imposed upon the "Named Insured" appear far more likely to apply to an institution such as the State of West Virginia than to an individual such as Thornsbury.

     Based on the foregoing, the court concludes that State Insurance Policy No. GL 440-64-11 is unambiguous as to Thornsbury's lack of status as a "Named Insured."

B. State Insurance Policy No. GL 440-64-10

Although the complaint in this action included as an attachment only Policy No. GL 440-64-11, National Union's motion also seeks a declaration as to Thornsbury's status as a "Named Insured" under Policy No. GL 440-64-10. The latter policy, GL 440-64-10, appears to include the same coverages as the policy discussed in the complaint, but provides coverage for "Each West Virginia County Board of Education" and "Each West Virginia Political Subdivision, charitable or public service organization or emergency services agency covered by Certificates of Liability Insurance on file with the Company." State Insurance Policy 440-64-10, Endorsement 1.[10]

The court is reluctant to determine Thornsbury's status under this second policy, No. GL 440-64-10, at this juncture. The policy is not mentioned in the complaint, nor in defendant Thornsbury's briefing on the motions for summary judgment.[11] Moreover, the definition of a "Named Insured" in the

_____

[10] Policy 440-64-10, as well as the Certificate of Insurance issued to the Mingo County Commission, are attached as Exhibit 3 to National Union's Motion for Partial Summary Judgment (ECF 50-3).

[11] Although defendant Thornsbury mentions "National Union Policy Number GL 440-64- 10" in the briefing, the language and exhibits in the brief's discussion of that policy clarify that defendant Thornsbury is actually discussing the other policy, No. GL 440-

second policy includes institutions "covered by Certificates of Liability Insurance."  State Insurance Policy 440-64-10 endt. 1. Because it is not clear what entities or persons hold certificates of insurance, it is also not clear who is a "Named Insured" under the policy, or even how that term is defined. National Union has supplied a Certificate of Liability Insurance issued to the Mingo County Commission, but it is presumably not the only such certificate that was issued.  The parties have not discussed this issue in their briefing, and so the court has little basis to declare, as a matter of law, that some person (such as Thornsbury) is or is not covered by the policy.

Accordingly, both parties' motions for partial summary judgment as to defendant Thornsbury's status as a "Named Insured" under State Insurance Policy No. GL 440-64-10 will be denied.

<u>Conclusion</u>

Given that Policy No. GL 440-64-11 defines the state and its organs — which are "Named Insureds" — as entities rather than persons, and that it supplies coverage for "members,"

---

64-11.  <u>See</u> Def. Thornsbury's Resp. to Pl. Mot. for Summ. J. at 3 n.1.

23

"officials," and "employees" of those entities separately from the coverage for the entities themselves, Thornsbury cannot successfully maintain that the policy views him as the "Judicial Branch" or the "State of West Virginia" that fell in the category of "Named Insured."  He was instead a member, official, or employee of those institutions.  As the court explained above, he would likely trigger "Named Insured" coverage only when sued in his official capacity, as the claim might be construed as one against the state.  But that coverage, if it existed, would be owed to the State of West Virginia, which is the "Named Insured," and not to Thornsbury.

The court accordingly ORDERS that plaintiff National Union's motion for partial summary judgment that Thornsbury is not a "Named Insured" under Policy No. GL 440-64-11 be, and it hereby is, granted; and further ORDERS that defendant Thornsbury's motion for partial summary judgment on that same subject relative to Policy No. GL 440-64-11 be, and it hereby is, denied.

To the extent that the parties' motions request determination of Thornsbury's status as a "Named Insured" under the second policy, No. GL 440-64-10, the court ORDERS that their

24

motions for partial summary judgment be, and they hereby are, denied without prejudice.

The Clerk is directed to transmit copies of this order to all counsel of record and any unrepresented parties.

ENTER:        June 28, 2016

John T. Copenhaver, Jr.
United States District Judge

25